*In re* ADOPTION OF VALERIE ANN KLEBA, a Minor.—(JOHN A. ORNSTEAD *et al.*, Petitioners-Appellees, *v.* DANIEL J. KLEBA, Respondent-Appellant.)

First District (3rd Division)   No. 60906

———

Opinion filed March 18, 1976.

Peter Berman and Jeffrey Weiss, both of Legal Assistance Foundation, of Chicago, for appellant.

Michael A. Abramson and Robert Sheridan, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Respondent, Daniel J. Kleba, appeals from a decree of adoption which found him to be an unfit person within the meaning of the Illinois Adoption Act (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1 *et seq.*) and terminated his parental rights with respect to Valerie Ann Kleba, his natural daughter. The decree declared Valerie Ann to be the adopted child of petitioners, Linda Ornstead, the natural mother of Valerie Ann and the former wife of respondent, and John A. Ornstead, Linda's present husband. Respondent contends that the trial court's finding that he was unfit is against the manifest weight of the evidence, and that he was denied due process and equal protection of the law when his parental rights were terminated.

In their amended petition for adoption petitioners alleged that respondent had been incarcerated in the State Penitentiary, having pleaded guilty to two counts of armed robbery and three counts of rape, and is therefore "inherently deficient of moral sense and rectitude and is depraved." Respondent filed an answer to the amended petition in which he denied these allegations except those pertaining to his incarceration and the crimes for which he was committed. He further stated that he is a fit father and has maintained a reasonable degree of interest in the child's welfare, but that petitioner Linda Ornstead is unfit to have the care and custody of Valerie Ann because she actively prevented him from having access to or communication with the child.

At an evidentiary hearing on the amended petition the following facts were adduced. Respondent and petitioner were married on March 30, 1968, and Valerie Ann was born on May 19, 1968. Petitioner testified that at the time of the marriage she was aware that respondent had been indicted on one count of rape and one of armed robbery, but she did not then consider him depraved or unfit to be the father of her child. She stated that before his incarceration respondent had on occasions come

home "drunk," but his conduct toward her and Valerie Ann was generally "fine" and he showed love and affection toward the child and did not mistreat her, although he occasionally acted as if he did not care one way or the other.

Respondent testified that Linda once left Valerie Ann in his care while she went shopping; on cross-examination he stated that he watched the child only once, and that from May to December of 1968 he went out nine or ten times and also had on occasion come home "drunk." He testified that in December 1968, after first consulting his wife and mother, he entered a plea of guilty to five criminal charges and received two 1- to 10-year sentences for two counts of robbery, two 4- to 12-year sentences for two counts of rape, and a 15- to 45-year sentence on the third count of rape, all sentences to run concurrently. Respondent also testified that the three rapes for which he was convicted had occurred both before and during his marriage to Linda; however, in testifying as an adverse witness he could not recall if the rapes had occurred at different times, whether the same or different women had been involved, or if they had been minors or adults.

Linda Ornstead testified on cross-examination that shortly after respondent was incarcerated she wrote to him that she would wait for him, and that if they were ever divorced she would still write to him and he could see Valerie Ann when he wanted to. On August 1, 1969, she obtained a divorce from respondent and was granted custody of Valerie Ann. In October 1969, at respondent's request, she brought Valerie Ann to the penitentiary to see him. In December of 1969, petitioners Linda and John Ornstead were married. Linda testified that respondent had been sending Valerie Ann gifts from prison, but that in 1970 she told him she was trying to start a new life, and it would be impossible to do so if he continued to communicate and send gifts to the child.

Respondent testified that he lives on a minimum security farm at the Pontiac Correctional Center and is eligible for parole in 1976. He has successfully completed an electronics course in prison and worked in the carpenter shop, and did repair work on the warden's house in Pontiac, at which time he had occasion to run errands in the town without supervision.

At the conclusion of the hearing the trial court entered an order finding respondent to be an unfit person and terminating his parental rights to Valerie Ann Kleba; the order also declared Valerie Ann to be the child of petitioners and ordered her name changed to Valerie Ann Ornstead.

■■ Respondent contends that the order finding him unfit is contrary to the manifest weight of the evidence. He does not dispute that he committed three rapes and two robberies and that he is presently incarcerated, having pleaded guilty to those crimes. Petitioners allege in their

amended petition that respondent's depravity is thereby established. A petition for adoption may be granted without the consent of a natural parent if the court finds the parent unfit. (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—8.) One of the statutory grounds for unfitness is depravity (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—1, subdivision D(h)), which has been defined as "an inherent deficiency of moral sense and rectitude" (*Stalder v. Stone* (1952), 412 Ill. 488, 498, 107 N.E.2d 696). Conviction of a felony alone is not a statutory ground for adoption without the consent of a natural parent, and a finding of depravity cannot be based exclusively on the fact of a criminal conviction. (*Townsend v. Curtis* (1973), 15 Ill. App. 3d 209, 303 N.E.2d 566.) Insofar as the nature of a crime is taken into consideration in a determination of depravity, it has been held that no circumstances would mitigate the crime of forcible rape and that a trial court could find one convicted thereof to be inherently deficient in moral sense or rectitude. (*Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 203 N.E.2d 160.) More recently, however, the principle of "once depraved—always depraved" has been rejected and it has been held that in order to establish unfitness, clear and convincing evidence of depravity must be shown to exist at the time of the petition or at the time of the decree of adoption; and further, that "[t]he acts constituting depravity * * * must be of sufficient duration and of sufficient repetition to establish a 'deficiency' in moral sense and either an inability or an unwillingness to conform to accepted morality." *Young v. Prather* (1970), 120 Ill. App. 2d 395, 397, 256 N.E.2d 670; also see *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208.

■■ In the instant case, while it is true that several years have passed since the criminal convictions and while the mother testified that she considered respondent fit during their marriage, these factors must be considered as well as the limited evidence respondent presented of his efforts to rehabilitate himself in the intervening 7-year period. In *Young v. Prather*, the court found that a mother, although convicted of burglary and imprisoned, had proved to the satisfaction of the trial court that she made substantial efforts toward rehabilitation beginning in prison and continuing for 3 years after her release. Unlike the mother in *Young*, respondent here has not been released from prison. Such evidence as he presented of his rehabilitation, therefore, is weakened because his opportunity to commit further criminal acts has been severely restricted since December of 1968 when he was first imprisoned. While respondent testified that he had not been involved in any difficulty while in prison, that he was living in minimum security surroundings and had successfully completed a course while in prison, this is short of the rehabilitation proved in *Young*.

In determining whether parental unfitness was proved by clear and convincing evidence, we bear in mind that the trial court's determination

of a natural parent's unfitness should not be disturbed on review unless it is contrary to the manifest weight of the evidence (*Thorpe v. Thorpe* (1964), 48 Ill. App. 2d 455, 198 N.E.2d 743), and that the credibility of the witnesses is a matter we must leave to the trier of fact (*Garrett v. Babb* (1975), 24 Ill. App. 3d 941, 322 N.E.2d 217). Respondent claims that his convictions were the only evidence available to the trial court in reaching its decision that he was depraved at the time of the hearing. This ignores the fact that the trial court also had properly before it the real evidence of respondent's demeanor as he testified in the instant case that he had in fact raped three women and could not recall whether or not the rapes occurred at different times or if the same or different women had been involved, or if they were minors or adults. The court could properly take into consideration respondent's demeanor on the stand while giving this evidence when it determined whether or not he was depraved at the time of the hearing. In addition, no evidence of any mitigating circumstances was presented as to the crimes of which respondent was convicted. Unlike the mother in *Young v. Prather*, who had been convicted of *one* count of burglary, had completed 1 year of her sentence and had been released for 3 years prior to the adoption hearing, in the instant case respondent was convicted and still incarcerated, having pleaded guilty to *three* counts of rape and *two* counts of robbery. The trial court could have found that the course of conduct exhibited by respondent constituted depravity. (*Taylor v. Starkey* (1974), 20 Ill. App. 3d 630, 314 N.E.2d 620.) After a review of the entire record, we cannot say that the trial court's finding of depravity is contrary to the manifest weight of the evidence.

■■ Respondent further argues that his rights and interests as a natural father should have been taken into consideration in the adoption proceedings as well as the interests of the child. It is true that an adoption cannot be awarded solely on the basis of what is in the best interest of the child. Unlike custody proceedings, in which the best interest of the child is the controlling question, in adoption proceedings there must be an appraisal of the effect of adoption upon both the child and the natural parent whose relationship is sought to be terminated. (*In re Petition to Adopt Cech* (1972), 8 Ill. App. 3d 642, 291 N.E.2d 21.) However, where as here, there is clear and convincing evidence of the unfitness of a natural parent, then the natural right of the parent must yield to the best interest of that child. *In re Deerwester* (1971), 131 Ill. App. 2d 952, 267 N.E.2d 505.

■■ Respondent has raised several constitutional questions for the first time in this court. He contends that the word "depravity" is so vague as to violate due process of law; that the trial court employed an irrebuttable presumption that once an individual has been convicted of felonies involving moral turpitude he will always be depraved and unfit to be a parent; and that he had been denied equal protection of law because he is

a member of a class (*i.e.*, convicted felon) which is treated differently from others with respect to parental rights without the showing of a compelling State interest. Our review of the entire record indicates that these constitutional questions have not been raised in or passed upon by the trial court. Considering all the circumstances of this case, we hold that respondent has waived these issues for the purposes of appeal. *In re Ladewig* (1975), 34 Ill. App. 3d 393, 340 N.E.2d 150; *In re Einbinder* (1975), 31 Ill. App. 3d 133, 334 N.E.2d 187; *People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.

For the foregoing reasons, the decree of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.