650 P.2d 484

**In the Matter of the APPEAL IN PIMA COUNTY JUVENILE ACTION NO. S–983.**

**No. 2 CA–CIV 4328.**

Court of Appeals of Arizona, Division 2.

June 25, 1982.

Review Denied Sept. 9, 1982.

Peter Axelrod, Tucson, for appellant.

Roger S. Auerbach, Tucson, for appellee.

Paul F. Tosca, Jr., Tucson, for minor child.

## OPINION

HOWARD, Chief Judge.

Appellant, the natural father of C., appeals from an order severing his parental relationship with the child. Appellee, C.'s natural mother, filed the petition for severance alleging that appellant was serving time in the Wilmot Training Facility, Arizona Department of Corrections, for one count of rape and three counts of sexual assault and that he was unfit to parent the minor child because his influence would seriously endanger the child's physical, mental, moral or emotional health.

Although the juvenile court's decision antedated *Santosky v. Kramer,* —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the court applied the "clear and convincing evidence" standard mandated by *Santosky.* We therefore must decide whether there was substantial evidence to support the decision. *In the Matter of the Appeal in Maricopa County, Juvenile Action No. JS–4130,* 132 Ariz. 486, 647 P.2d 184 (1982).

A.R.S. § 8–533(B), as amended, provides in pertinent part:

"B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court may also consider the needs of the child:

\*    \*    \*    \*    \*    \*

4. That the parent is deprived of civil liberties due to the conviction of a felony if the felony of which such parent was convicted is of such nature as to prove the unfitness of such parent to have future custody and control of the child, or if the sentence of such parent is of such length that the child will be deprived of a normal home for a period of years."

The juvenile court expressly found that appellant had been sentenced to prison for a period of seven years as the result of convictions of sexual assault, attempted sexual assault, and kidnapping; that the victims of each offense were young women, unknown to appellant; that appellant showed little or no remorse or regret about the occurrences, other than the loss to him of his liberty and possibly of his son; that appellant's sentence was of such length that the child would be deprived of a normal home for a period of years; that the natural parents were divorced from each other; that the child support provided by appellant was $2.00 per month;[1] that appellant had never resided with the child; and that there had been no bonding between appellant and the child. The court concluded that the best interests of the child would be served by permitting the severance and that appellant had been deprived of his civil liberties due to his conviction of a felony of such a nature as to prove his unfitness as a parent to have the future custody and control of the minor child.

The evidence reflects the following. Appellant and appellee were married on January 19, 1980, when he was 22 and she was 17. Several months later, appellant was arrested and charged with sexual assault, attempted sexual assault and kidnapping. The first charge arose out of an incident which occurred two nights before his marriage, and the other two charges out of an incident which occurred approximately two months after the marriage. Appellant pled guilty and was sentenced to a seven year term.[2]

On June 3, 1980, appellee filed a petition for dissolution of marriage, alleging that appellee was pregnant, was the proper person for custody of the child, and that appellant should have reasonable rights of visitation. At that time, appellant had been arrested and was incarcerated in the Pima County Jail. The child was born on August 5, 1980, and on January 16, 1981, a contested hearing was held on the dissolution. The marriage was dissolved and custody of the child was awarded to appellee. The court expressly found the following: (1) that appellant was in the custody of the Department of Corrections and incarcerated in the Wilmot Road facility; (2) that because of this incarceration, he was unable to earn any significant income and therefore would be required to pay child support of only $2.00 per month until such time as his release; (3) that upon release and proper petition being filed, the court would review the matter of child support; (4) that visitation with the minor child by appellant would not seriously endanger the child's physical, mental, moral or emotional health; and (5) that it was in the best interests of the child that he have visitation with appellant and appellant's mother. The court very carefully spelled out the terms for appellant's exercise of his visitation rights while in the custody of the Department of Corrections and reserved ruling upon the extent and conditions of appellant's visitation rights when released. During the period of his incarceration, appellant was to have visitation with the child one time per month under conditions imposed by the Department of Corrections.

Less than two months later, in March 1981, the petition for severance was filed. In July, appellee remarried. In November, the severance hearing was held and, with the exception of two months, appellant had visitation with the child every month from February through October.

The counselor at the Department of Corrections who was assigned to appellant testified at length. He had had weekly ses-

---

1. This is the amount ordered in the decree of dissolution.

2. The record is unclear as to whether the guilty plea was only as to the sexual assault.

**184**

sions with appellant for approximately two and a half months. According to him, he was impressed with the fact that appellant had admitted the offense of sexual assault. He was of the opinion that appellant was treatable through counseling and was responsive to it. When asked to explain why appellant stated to the juvenile judge that he was not a rapist, the counselor stated:

"Because the actual behavior that—he did was like a fraction of his whole life, and that, by rights, I don't think he should characterize himself as a rapist. He was guilty of the act of rape, and that he—I think he was accurate in saying that he doesn't—he hadn't in the past gone around raping, and he—his convictions at this point are that he's not going to do that in the future, and he's working hard at it.

\* \* \* \* \* \*

A person who is a rapist has, usually has a history of—a developmental history from the time he's very young, which include [sic] peeping into windows, dressing up in women's clothes, and a lot of developmental sexual type experiences, and Michael didn't fit that at all."

According to Mr. Lewis, the counselor, appellant was genuine in his concern for the child and had begun counseling with Dr. Ford, a private contractor, months before Lewis took over.

Another counselor at the facility also testified as to appellant's discussions with her about his feelings and his trying to understand his feelings. According to her, appellant sought her out when he needed someone to talk to primarily about his concern and love for his child. When asked whether she had an opinion as to whether appellant would pose a danger to his child, she responded that her "sense" was that he would not. She based that on her interactions with him, her feedback from Lewis and Ford, from housing people and her sense of his values. When asked on cross examination as to her opinion of whether appellant would sexually assault other women when released from prison, she stated:

"I know the intensity of Michael's commitment to understanding why he did what he did, and that what he did, he did, was reprehensible. He feels guilty about it, and that Michael is willing to accept—accepting the consequences for that.

And the more so—Michael does not want to repeat that behavior. He wants to learn whatever it is that needs to be learned so that he discontinues that. So that's—so that's the—whatever he's done is then dead. He won't do that kind of thing anymore. That he's productive and a positive citizen."

Appellant admitted that he had been using drugs for a period of five years prior to the offenses involved. On the evening of the sexual assault, he had indulged in drugs and also had been drinking extensively at a party planned for him by some of his friends prior to his marriage. Appellant had participated in the TASC treatment and had attended classes at Pima College with regard to drug and alcohol abuse. When asked whether he would abstain from drugs and alcohol upon release, he responded that he could not give a yes or no answer, but would try to avoid drugs and alcohol to the best of his ability.

■ We disagree with appellant that the juvenile court was limited by principles of res judicata as to the dissolution court's determination regarding appellant's fitness for purposes of visitation while he was in the custody of the Department of Corrections. See *Matter of Newman,* 49 Or.App. 221, 619 P.2d 901 (1980). We also disagree that the evidence is insufficient to justify termination of appellant's parental rights.

We must accept the juvenile court's findings in support of termination of the parent-child relationship unless they are clearly erroneous. *Matter of Juvenile No. J–2255,* 126 Ariz. 144, 613 P.2d 304 (App.1980).

Two recent decisions have interpreted A.R.S. § 8–533(B)(4). *In the Matter of Juvenile No. J–2255,* supra; *In the Matter of the Appeal in Pima County Juvenile Action Nos. S–826 and J–59015,* 132 Ariz. 33, 643 P.2d 736 (1982). In the first case, the father had prior convictions of molesting

 

young girls. In the later case, the father was in prison, having been convicted by a jury for rape and sodomy of a nine-year-old child. He had a prior conviction for child abuse and was serving a 20-year to life sentence. We pointed out that certain crimes support a rational inference of parental unfitness and proof of the conviction of such crimes creates a rebuttable presumption that the father is unfit to parent children.

We agree that an act of sexual assault is "egregiously offensive." *In re Involuntary Termination of Parental Rights,* 449 Pa. 543, 297 A.2d 117 (1972). Whether or not commission of such crime, in and of itself, permits a rational inference of unfitness is a question we need not decide in this case. We believe that the commission of a sexual assault on the eve of marriage and the attempted sexual assault two months after marriage demonstrate an inability or unwillingness to conform to accepted morality. The counseling appellant had undertaken in prison was of short duration and therefore the juvenile court could have rejected the opinion that appellant was treatable.

Appellant testified at length about his concern for being able to be a father to his son. It would appear that the concern stemmed from the fact that he had lacked such a relationship and attributed many of his problems to this. He admitted long-standing substance abuse and the possibility that he might not be able to resist temptation when released.

The juvenile judge had the benefit of appellant's demeanor when he testified and could consider this when determining his fitness. *Ornstead v. Kleba,* 37 Ill.App.3d 163, 345 N.E.2d 714 (1976). Appellant's search, via counseling, for an understanding of his deviant behavior may have been too short-lived and self-oriented to show rehabilitation or a strong potential.

We recognize the vital importance to both parent and child of termination of their relationship. However, it is not the function of an appellate court to substitute its judgment for that of the juvenile court where, as here, there is substantial evidence to support the determination of unfitness.

Affirmed.

BIRDSALL and HATHAWAY, JJ., concur.