786 P.2d 1004

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JS–7499.**

**No. 1 CA–JV 88–041.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 10, 1989.

Review Denied Feb. 14, 1990.

**154**

Robert K. Corbin, Atty. Gen. by C. Eileen ,Bond and Paul J. Matte III, Asst. Attys. Gen., Phoenix, for appellee-cross-appellant Arizona Dept. of Economic Sec.

Friedl, Richter & Buri by Charles E. Buri, Phoenix, for appellant-cross-appellee father.

Lewis and Roca by Jeremy E. Butler, Phoenix, for juvenile.

OPINION

BROOKS, Judge.

This is an appeal and cross-appeal from an order terminating the parent-child relationship between a father and daughter on grounds of wilful abuse. Prior to the institution of proceedings in this matter, the father, a staff sergeant in the United States Air Force, had been convicted by general court martial of committing a number of sexual offenses against the child. The father has appealed from the order terminating his parental rights, raising the following issues:

(1) Did the juvenile court deny the father due process of law by:

(a) admitting into evidence a transcript of the child's court martial testimony in order to establish the allegation of wilful abuse;

(b) refusing to permit the father to confront and cross-examine the child at the severance hearing?

(2) Did the juvenile court err in its findings regarding the sentence imposed against the father upon his military conviction?

The Department of Economic Security (DES) has filed a cross-appeal, also arguing that the juvenile court erred in its findings regarding the sentence imposed against the father.

FACTS AND PROCEDURE

In April 1985, the child, then seven-and-a-half years of age, reported that her father had been sexually abusing her for years. He denied the accusations. The mother chose to believe the father rather than the child, who was declared dependent and placed in foster care. In October 1985, the father was convicted by a general court martial of rape, sodomy, and indecent acts with the child. The sentence initially imposed included a prison term of twenty-five years and dishonorable discharge from the service.

The father appealed his conviction. In 1986, the United States Air Force Court of Military Review modified the findings of guilt on grounds that some of the charges

regarding indecent acts with a minor were time-barred. In all other respects, the court affirmed the general court martial's findings of guilt and the sentence imposed.

The father petitioned for further review by the Court of Military Appeals, which granted review and, in April 1988, set aside the decision of the court of review and remanded for further proceedings. Upon remand, the court of review set aside all of the findings of guilt that pertained to charges of indecent acts with a minor, but reaffirmed those pertaining to the rape and sodomy charges. The court also set aside the sentence previously imposed and ordered rehearing thereon. As of June 6, 1989, the date of oral argument on the appeal now before us, the father had been resentenced and was again pursuing a military appeal.

Meanwhile, the child has been in foster care since the report of abuse in 1985. In June of 1987, DES filed a petition to terminate the relationship between the child and both of her parents.[1] As grounds for terminating the father's rights, the petition alleged that he had been deprived of civil liberties due to conviction of a felony, the nature of which shows his unfitness to have the future custody and control of his child and that he had been sentenced to a term of imprisonment of such length as to deprive the child of a normal home for a period of years. *See* A.R.S. § 8–533(B)(4). The social study that accompanied the petition identified a further ground for termination—that the father had wilfully abused the child. *See* A.R.S. § 8–533(B)(2).

The father contested the petition. In December of 1987, after a hearing at which the father was unable to appear, Juvenile Court Judge Edward C. Rapp entered an order granting the petition and terminating the parent-child relationship. However, we reversed that ruling because it had been issued before a transcript of the father's telephonic deposition had become available for the juvenile court's consideration. *See Matter of Appeal in Maricopa County*

*Juvenile Action No. JS–7499,* 1 CA–JUV 88–006 (order filed Feb. 23, 1988).

In May of 1988, DES filed a first amended petition, this time alleging all three of the above grounds for termination. Judge Rapp recused himself from further participation in the matter, which was then assigned to Judge C. Kimball Rose. Hearing was again held in the father's absence. Through counsel, the father subpoenaed the child to testify concerning the allegation of wilful abuse. The child's counsel, however, urging that the stress of testifying would probably cause the child to experience prolonged emotional trauma and therapeutic regression, moved for an order quashing the subpoena and admitting into evidence a transcript of the testimony that the child had given at the court martial, including direct, cross-, and redirect examination.

Two experts—a psychiatrist and the child's therapist—testified regarding the child's emotional condition and the likely effects of requiring her to testify at the severance hearing. The therapist testified that, in her opinion, the child would perceive being required to testify as a punishment and that testifying would not only be very traumatic for her, but would probably cause her to regress to a point that would negate two and one-half years of therapy. The psychiatrist, while acknowledging the possibility that the child might actually benefit in the long run from being required to testify, agreed that testifying would cause her significant emotional pain. Based upon this testimony, the juvenile court found that the child would probably suffer significant emotional harm if required to testify. Weighing this fact against both the father's constitutional rights and the constitutional protections afforded him during the child's former testimony, the court found that the child was unavailable as a witness, granted the motion to quash, and admitted the transcript into evidence.

---

1. The child's mother did not contest the allegations in the petition that pertained to her. Accordingly, in September 1987, the juvenile court

entered an order terminating the parent-child relationship between mother and child.

Because the court of military review had set aside the father's sentence, the juvenile court granted DES's motion to dismiss the allegation in the petition regarding the lengthy sentence. After considering the evidence presented, the court entered its findings of fact and conclusions of law. Among the findings of fact were the following:

9. On September 22, 1988, the Department of the Air Force, Headquarters Twelfth Air Force (TAC) affirmed the convictions specified in Finding 8 above, and affirmed the sentence of confinement for 25 years.

.　　.　　.　　.　　.

11. At a minimum, the father will have to serve 8 years, 4 months of the sentence dating from October 4, 1985, which would give the father an earliest release date in February, 1994.

12. No evidence or authority has been presented that would indicate that conviction by General Court Martial of acts which are felonies under state statutes deprives the convicted of his civil liberties.

13. The father committed acts of sodomy and cunnilingus upon his daughter and forced her to commit fellatio upon him, which acts have caused the child mental injury and have caused the child to mentally deteriorate.

The juvenile court concluded that although the father had been convicted of felonies, the nature of which proved his unfitness to have future custody and control of the child, and the sentence thereon was of such length that the child would be deprived of a normal home for a period of years, such conviction had not deprived the father of civil liberties. However, the court also concluded that the father had wilfully abused the child and, on that basis, entered an order terminating the parent-child relationship.

On appeal, the father first complains that the manner in which the allegation of wilful abuse was established denied him due process of law. Because the child's former testimony was the only evidence offered to support the allegation, he argues that due process required that he be permitted to confront and cross-examine her. Underlying this argument is his contention that the juvenile court erred in finding that the child was "unavailable as a witness." The father thus urges that the court erred in quashing the subpoena for the child's appearance at the severance hearing and in admitting the transcript of her former testimony into evidence.

## ADMISSIBILITY OF THE TRANSCRIPT

■ The father argues that the transcript of the child's former testimony was inadmissible hearsay because the court's ruling that the child was "unavailable as a witness," within the meaning of Rule 804(a), Arizona Rules of Evidence, lacked support in law or fact.[2] After reviewing the record, we are satisfied that substantial evidence was presented to support the court's finding that the child was likely to suffer significant emotional harm if required to testify.[3] Whether that fact was sufficient as a matter of law to render the child "unavailable as a witness," within the meaning of Rule 804, however, is a question that we not need address.

The juvenile court made findings to support the admission of the transcript on three separate bases: Rule 804(b)(3), the exception for former testimony, which applies only when the hearsay declarant is

---

2. The child's counsel initially urged that the child's testimony was unavailable under Rule 804(a)(4), which provides that " '[u]navailability as a witness' includes situations in which the declarant ... is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." The juvenile court did not accept this position, however, reasoning instead that the term "includes" indicates that the rule does not provide an all-encompassing definition of unavailability.

3. The father claims that the child's court-appointed therapist lacked the expertise necessary to support her opinion that testifying might be so stressful for the child that it would lead to a "mental illness." He does not challenge her qualifications, however, to render an opinion regarding the child's perceptions or the likely effects that being required to testify would have on her therapeutic progress.

"unavailable as a witness"; Rule 803(24), the "catch-all" exception to the hearsay rule that applies even though the declarant is available as a witness; and A.R.S. § 8–238, a statutory exception that applies in certain juvenile proceedings.[4] Of these findings, the father disputes only one—that the child was "unavailable as a witness" within the meaning of Rule 804. However, that finding was not a prerequisite to admissibility under either Rule 803(24) or A.R.S. § 8–238. Accordingly, at least insofar as the Arizona statutes and rules of evidence are concerned, we find no error in the admission of the transcript.

The father maintains, however, that even if the transcript was otherwise admissible under the rules of evidence, without a supportable finding that the child was "unavailable," its admission violated his constitutional rights to confront and cross-examine the child.

## THE RIGHT TO CONFRONTATION

The father urges us to hold that a child for whom testifying will probably result in significant emotional trauma and therapeutic setback is not thereby rendered "unavailable" to the extent necessary to overcome an objection based upon the confrontation clauses of the state and federal constitutions. He correctly points out that the record in the instant case presents a lesser showing of unavailability than was made in *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987).[5] Again, however, we find it unnecessary to reach this question.

4. A.R.S. § 8–238 provides:
   The out of court statements or nonverbal conduct of a minor regarding acts of abuse or neglect perpetrated on him are admissible for all purposes in any adoption, dependency or termination of parental rights proceeding under this title if the time, content and circumstances of such a statement or nonverbal conduct provide sufficient indication of its reliability.

5. In *Robinson*, our supreme court found sufficient evidence to support the trial court's ruling that a five-year-old child-molest victim was unavailable as a witness due to an existing mental infirmity. An expert had testified that the child would be uncommunicative if asked about the assault, and the trial judge had reviewed transcripts of the child's prior unsuccessful attempts to testify. *But see State v. Vincent*, 159 Ariz. 418, 768 P.2d 150 (1989), which leaves undecided whether a showing that face-to-face testimony would likely be traumatic, but not so disabling as to render a child unable to reasonably communicate, would overcome a criminal defendant's right to confront adverse witnesses.

The United States and Arizona constitutions guarantee *criminal defendants* the right to confront their accusers.[6] But this right belongs solely to the accused in a criminal prosecution. It has no direct application in proceedings to terminate parental rights, which are essentially civil in nature. *See In re the Appeal in Maricopa County Juvenile Action No. J–75482*, 111 Ariz. 588, 536 P.2d 197 (1975) (because dependency proceeding is a civil matter, admission of hearsay raises no sixth amendment confrontation problems).

We acknowledge, however, that this court has twice stated that a parent's right to *due process* in termination proceedings includes "a right to confront witnesses where the witnesses' testimony goes to the heart of the termination proof." *See Matter of the Appeal in Yavapai County Juvenile Action No. J–9365*, 157 Ariz. 497, 500, 759 P.2d 643, 646 (App.1988); *Matter of the Appeal in Maricopa County Juvenile Action No. JS–4374*, 137 Ariz. 19, 23, 667 P.2d 1345, 1349 (App.1983).

This unfortunate choice of language misstates our supreme court's holding in *Matter of the Appeal in Maricopa County Juvenile Action No. JD–561*, 131 Ariz. 25, 638 P.2d 692 (1981) (hereinafter "*JD–561*"). In fact, that holding, which we discuss at greater length below, is to the contrary. While protecting a parent's due process right to test the reliability of a child's testimony through *cross-examination*, the supreme court neither stated nor implied that due process required that the parent be permitted to *confront* the child:

6. The United States Constitution, amend. VI, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Similarly, the Arizona Constitution, art. II, § 24, provides that "[i]n criminal prosecutions, the accused shall have the right ... to meet the witnesses against him face to face."

We recognize ... there may be instances in which the court may wish to limit the conditions under which children are examined by providing that examination be in chambers or by providing that only counsel for the parties be present. Testimony which is traumatic in nature would merit an examination in chambers, and the presence of counsel alone would be justified where a party's presence is potentially inhibiting. Such reasonable limitations would protect the emotional interests of the child while preserving the parents' due process right of cross-examination.

131 Ariz. at 28, 638 P.2d at 695. Whatever the scope of a parent's rights to due process of law in proceedings that affect the parent-child relationship, face-to-face confrontation with the child is not among them.

## DUE PROCESS AND THE RIGHT TO CROSS-EXAMINE

It is well settled that the fundamental liberty interest in the care, custody, and control of one's children may not be changed by the state without due process of law. *See Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *JD–561*, 131 Ariz. at 27, 638 P.2d at 694. The nature of the process that is due turns on a balancing of three factors: the private interest affected by the proceeding; the risk of error created by the state's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure. *Lassiter v. Department of Social Services*, 452 U.S. 18, 27–31, 101 S.Ct. 2153, 2159–62, 68 L.Ed.2d 640, 649–51 (1981); *Santosky*, 455 U.S. at 754, 102 S.Ct. at 1395, 71 L.Ed.2d at 607; *JD–561*, 131 Ariz. at 27, 638 P.2d at 694.

The father in this case relies heavily upon our supreme court's decision in *JD–561*, quoting from it at length in his notice of appeal. *JD–561* was an appeal from a declaration of dependency. The juvenile court had refused to permit the appellant father to cross-examine his daughter, whom he had allegedly molested. Instead, the trial judge had conducted an in-chambers interview with the child, excluding everyone but the child's therapist and the court reporter. On appeal, the supreme court weighed the three factors set forth above and stated:

Considering the nature of the interests involved in this case, it is essential under the adversary system that parents be given the opportunity to challenge the testimony of their children when such testimony is essential to establishing the parental misconduct alleged in the petition. Without the opportunity to test the reliability of a child's statements, the adversary process is subverted and made meaningless.

131 Ariz. at 28, 638 P.2d at 695. The court concluded that "absent stipulation of the parties, parents are denied due process of law when refused the right to cross-examine their children during a dependency hearing." *Id.*

One critical fact distinguishes *JD–561* from the case now before us. Unlike the father in *JD–561*, the father in this case had ample opportunity and motive to test the reliability of the child's statements in the context of the court martial proceedings. He does not contend otherwise. Nor does he suggest that events subsequent to the court martial would cause the child to change her testimony. He argues only that due process requires that he be afforded an *additional* opportunity to test the child's veracity within the context of the termination proceedings. We disagree.

■ The constitutional process to which parents are entitled in proceedings to terminate parental rights certainly includes the opportunity to cross-examine the witnesses against them. Nevertheless, the balance of competing interests does not require that a child, alleged to be the victim of sexual abuse by a parent, be subjected to *repeated* cross-examination regarding the details of that abuse. In reaching this conclusion, we recognize that the private interest affected in proceedings to terminate parental rights is entitled to substantial weight. Nevertheless, we agree with the juvenile court's conclusion that, in view of the constitutional protections afforded to

the father at the time of the child's former testimony, the balance of competing factors tips in favor of protecting the child from the emotional injury that she would probably suffer if required to testify. We therefore hold that the method by which the allegation of wilful abuse was established did not deprive the father of due process of law.

### FINDINGS AS TO THE FATHER'S SENTENCE

■ The father's final argument, in which DES joins—to a limited extent—is that the juvenile court erred in its findings and conclusion as they pertained to the sentence imposed upon his conviction by military court martial. The allegation regarding the father's sentence was not before the juvenile court, having previously been dismissed, presumably without prejudice. *See* Rule 41(a), Arizona Rules of Civil Procedure. We therefore agree that findings No. 9 and No. 11, as well as those portions of the court's conclusions that were based upon those findings, are erroneous insofar as they pertained to the sentence imposed against the father. To that extent, they must be stricken.

We do not agree, however, with the father's position that the erroneous findings and conclusion formed an inextricable part of the juvenile court's decision to grant the petition to terminate the father's parental rights. The only reasonable interpretation of the court's order is that its decision was based solely on the allegation of wilful abuse.

The juvenile court's order is affirmed as modified.

EUBANK, P.J., and SHELLEY, J., concur.