979 P.2d 1024

**MICHAEL J., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, and Zachariah J., Appellees.**

No. 1 CA–JV 98–0024.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 22, 1999.

Review Granted May 25, 1999.

Janet A. Napolitano, The Attorney General by Susan J. Gebhard, Assistant Attorney General, Phoenix, Attorneys for Appellees.

Gary Sheets, Phoenix, Attorney for Appellant.

Michael D. Hintze & Associates, Ltd. by Michael D. Hintze, Phoenix, Attorneys for Minor Child.

## OPINION

THOMPSON, Judge.

¶ 1 This appeal arises out of a severance of parental rights under Ariz.Rev.Stat. Ann. (A.R.S.) § 8–533. We reverse.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On September 6, 1995, appellant Michael J. (father), in custody since July 17, 1995, pled guilty to aggravated assault and misconduct involving a weapon. On November 30, 1995, he was sentenced to 3.5 years in prison. One month later, on December 25, 1995, his son Zachariah J. (child) was born. Father's prison term expires on January 12, 1999.[1]

¶ 3 In January 1996, father was served with Notice of Dependency proceedings regarding his child. The Arizona Department of Economic Security (ADES) notified father that the child was in their custody. On February 23, 1996, father wrote a letter to ADES requesting visitation with his child. ADES elected not to schedule visitation between father and child, apparently because father was in prison. ADES did not inform father of the child's subsequent custody with a maternal relative. The child has lived with this relative since June 1996.

¶ 4 On January 27, 1997, ADES filed a petition to terminate father's parental rights. At the pre-trial conference, father notified the trial court that he would contest the severance. The severance trial occurred on December 3, 1997. The trial court heard testimony from both the assigned caseworker and father.

¶ 5 On December 10, 1997, the trial court severed father's parental rights pursuant to A.R.S. § 8–533. First, the court found that

father "is deprived of civil liberties due to the conviction of a felony ... [and] that the sentence is of such length that his child will be deprived of a normal home for a period of years." A.R.S. § 8–533(B)(4) (Supp.1997). Second, the court found that father's convictions were of "such nature as to prove [his] unfitness ... to have future custody and control of the child." *Id.* Third, the court ruled that father "has abandoned the child." A.R.S. § 8–533(B)(1) (Supp.1997). Finally, the court found severance to be in the best interests of the child.

¶ 6 Father timely appealed. We have jurisdiction under A.R.S. §§ 12–120.21(A)(1) and 12–2101(B).

## DISCUSSION

¶ 7 We will reverse a juvenile court's ruling if its findings of fact are clearly erroneous. *See Maricopa County Juvenile Action No. JS–501568,* 177 Ariz. 571, 576, 869 P.2d 1224, 1229 (App.1994). In a proceeding to sever parental rights, the standard of proof is clear and convincing evidence. *See Santosky v. Kramer,* 455 U.S. 745, 769–70, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Moreover, the United States Supreme Court has recognized that the right to .control and custody of one's children is fundamental. *See Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). For the following reasons, we believe that the trial court's findings were not supported by clear and convincing evidence.

### 1. Length of Sentence

¶ 8 The trial court held that father's sentence due to his felony conviction "is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8–533(B)(4) (Supp.1997). That holding was clearly erroneous.

¶ 9 Severances based on the length of sentence clause of § 8–533(B)(4) typically

---

1. Father insists that he was scheduled for release in August 1998. ADES disputes this assertion. The record is unclear, except to note that father's sentence terminates in January 1999. A.R.S. §§ 13–701 and 13–702 eliminate all early releases except pursuant to A.R.S. § 41–1604.07,

which makes certain prisoners eligible for earned release credits. Finding no evidence in the record of father's earned release credits, we must presume that he will be released in January 1999.

have involved long sentences and severe circumstances. For example, in *Pima County Juvenile Action No. S–1147*, 135 Ariz. 184, 185, 659 P.2d 1329, 1330 (App.1983), Division Two of this court affirmed a severance based on the length of sentence clause of § 8–533(B)(4). In that case, father was serving a life sentence for second degree murder. *See id.*

¶ 10 In *Maricopa County Juvenile Action No. JS–7499*, 163 Ariz. 153, 155, 786 P.2d 1004, 1006 (App.1989), the length of sentence was one of several grounds to sever the father's parental rights. In that instance, father was serving a twenty-five year sentence for the rape and sodomy of his seven-year-old daughter. *See id.* at 154, 786 P.2d at 1005.

¶ 11 We are not persuaded by this court's reasoning in *Maricopa County Juvenile Action No. JS–9104*, 183 Ariz. 455, 904 P.2d 1279 (App.1995). In that case, father was serving a 5.25 year sentence for a drug conviction. *See id.* at 457, 904 P.2d at 1281. Acknowledging that a severing court must find both a statutory ground plus the best interests of the child, this court upheld the severance of father's parental rights, relying on the length of father's prison sentence as the sole enumerated, statutory ground. *See id.* at 461, 904 P.2d at 1285. This is inconsistent with prior severances based on the length of sentence clause of § 8–533(B)(4). The dissent noted that, "[n]o prior Arizona case comes close to holding that parental rights can be severed because of a 5.25–year sentence...." *Id.* at 462, 904 P.2d at 1286 (Noyes, J., dissenting). Severance was deemed proper in cases involving "far longer sentences and far more aggravated factors." *Id.* In those cases, the sentences were so lengthy as to preclude a meaningful parent-child relationship. In this case, father's sentence is shorter than the sentence in *JS–9104*, as is the time left to be served at the commencement of the severance trial.[2] Not-

withstanding that this case is distinguishable, we do not follow the rationale in *JS–9104*.

¶ 12 It is hazardous to take the comprehensive approach utilized in *JS–9104*. There, the majority viewed § 8–533(B)(4) in the context of the child's best interests:

A.R.S. section 8–533(B)(4) has been properly construed by the juvenile court given the facts presented in this particular case. Given the transitional age of the child at the time (from child to teenager); the evidence of a broken parent-child bond; the child's self-initiated desire to be adopted by her stepfather; the mental and emotional make-up of the child; and the stepfather's eagerness to adopt and parent the child and thus create an intact family for the child during her most difficult years compels us to hold that the juvenile court did not abuse its discretion in granting severance in this case. Adoptability of the child is one factor in considering the child's best interests. *Maricopa County Juvenile Action No. JS–501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App.1994). We do not hold or believe that a natural parent's prison sentence of 5.25 years would necessarily mandate such a result in every case. We only hold that the result was correct given the totality of the evidence in this case.

*Id.* at 461, 904 P.2d at 1285.

¶ 13 This approach illustrates the unfortunate conflation of § 8–533(B)(4) with the separate and distinct analysis of the child's best interests. *See* A.R.S. § 8–533(B) (Supp. 1997). The dissent in *JS–9104* recognized this problem, noting that the juvenile court wrongly focused on adoption issues and the suitability of the "new family unit." 183 Ariz. at 462, 904 P.2d at 1286. Visitation and custody-related issues "should have been resolved in domestic relations court, not by severing father's parental rights." *Id.* In the present case, the child currently thrives in an amiable environment. Section 8–533 does not, however, allow the government's concerns as to a child's best interests, however

---

2. This court has refused to consider the possibility of an early release date in a "length of sentence" analysis pursuant to § 8–533(B)(4). "[W]hether [father] may or may not make parole is irrelevant and does not control the language of A.R.S. § 8–533(A) and (B)(4)." *Maricopa County*

*Juvenile Action No. JS–5609*, 149 Ariz. 573, 575, 720 P.2d 548, 550 (App.1986). Under the current "truth in sentencing" regime, this may no longer be a sensible approach. *See* A.R.S. §§ 13–101(7), 13–701, and 13–702.

justified, to inspire a severance on the putative basis of a 3.5 year sentence. *See id.* "Arizona law does not give judges free rein to consider as paramount the best interests of the child when termination of the parental relationship is at stake." *Pima County Juvenile Action No. S–120171*, 183 Ariz. 546, 549, 905 P.2d 555, 558 (App.1995) (Espinosa, J., concurring). Indeed, severance "is a serious matter and courts should bend over backwards, if possible, to maintain the natural ties of birth." *Maricopa County Juvenile Action No. JS–500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990) (citing *Anonymous v. Anonymous*, 25 Ariz.App. 10, 11, 540 P.2d 741, 742 (1975)).

¶ 14  When a parent is incarcerated for most, if not all, of the child's formative years, it is clear "that the child will be deprived of a normal home for a period of years." A.R.S. § 8–533(B)(4) (Supp.1997). The present case is quite different. Here, father is only serving a 3.5 year sentence. At the time of the severance hearing, he had only one year left on his sentence. A severance based on this short duration is tantamount to denying felons their parental rights as a matter of law. Section 8–533 does not warrant such an outcome. We hold that there must be some showing, beyond the mere fact of a prison term, that the sentence is of such length that it will significantly and detrimentally impact the child's home life so that we should negate the parent's fundamental interest in raising the child. ADES has made no such showing in this case.

## 2. Unfitness

¶ 15  The trial court also erred in holding that father's conviction "is of such nature as to prove the unfitness of such parent to have future custody and control of the child." A.R.S. § 8–533(B)(4) (Supp.1997). Father was convicted of aggravated assault and misconduct involving a weapon. Although these are serious offenses, the case law does not suggest that they are inherently indicative of parental unfitness. In general, the case law has indicated that the nature of a crime illustrates unfitness where the crime is sex-related or is a crime *against* the child or other family members.

¶ 16  First, in *JS–7499*, this court affirmed a severance for several reasons, including unfitness. 163 Ariz. 153, 786 P.2d 1004. In that case, father had raped and sodomized his daughter. *See id.* at 154, 786 P.2d at 1005.

¶ 17  Second, in *Pima County Juvenile Action No. S–949*, 134 Ariz. 442, 657 P.2d 430 (App.1982), Division Two of this court affirmed another severance of parental rights. In that case, father was also convicted of attempted sexual assault, sexual abuse, and attempted kidnapping. *See id.* at 443, 657 P.2d at 431. These crimes included misconduct involving his twelve-year-old sister-in-law. *See id.* The court noted that the child easily could "be subjected to sexual abuse" by her father. *Id.* at 444, 657 P.2d at 432.

¶ 18  Third, in *Pima County Juvenile Action No. S–983*, 133 Ariz. 182, 185, 650 P.2d 484, 487 (App.1982), Division Two of this court affirmed a severance on the grounds of unfitness. There, father was serving a sentence for sexual assault and kidnapping. *See id.* at 183, 650 P.2d at 485. The court noted that those crimes could "support a rational inference of parental unfitness and proof of the conviction of such crimes creates a rebuttable presumption that the father is unfit to parent children." *Id.* at 185, 650 P.2d at 487.

¶ 19  We hold that, to prove unfitness pursuant to § 8–533(B)(4), the felony must directly demonstrate the individual's substantial unfitness to parent, as opposed to the general character defects reflected by the commission of any felony. Here, father was convicted of aggravated assault for threatening to shoot another adult with whom he had a minor traffic accident. Additionally, he was convicted of misconduct involving a weapon for illegally possessing a sawed-off shotgun. Without a doubt, these crimes indicate serious character defects. The commission of a violent felony may, in some other context, support severance under § 8–533(B)(4). In this case, however, father's crimes do not directly reflect a substantial unfitness to parent.

## 3. Abandonment

¶ 20  The trial court also found that father had "abandoned the child" pursuant to A.R.S.

§ 8–533(B)(1). This ruling was clearly erroneous.

¶ 21 Abandonment is defined in A.R.S. § 8–531(1) as follows:

"Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

¶ 22 For abandonment to be found, there must be "conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship." *Anonymous*, 25 Ariz.App. at 12, 540 P.2d at 743 (citing *D.M. v. State*, 515 P.2d 1234, 1237 (Alaska 1973)). Moreover, the conduct " 'must be intentional and must show a settled purpose to relinquish all parental rights in the child.' " *Id.* (quoting *Sernaker v. Ehrlich*, 86 Nev. 277, 468 P.2d 5, 7 (1970)).

¶ 23 ADES argues that the new statutory definition of abandonment does not consider a parent's intent. We disagree. Intent is crucial to the issue of abandonment. ADES correctly points out that "the new legislation deletes the intent language from the abandonment definition." *Pima County Juvenile Action No. S–114487*, 179 Ariz. 86, 97 n. 14, 876 P.2d 1121, 1132 n. 14 (1994). However, conduct and intent are not mutually exclusive. Although our supreme court in *S–114487* considered the abandonment issue under its previous definition, the court described the relationship between conduct and intent under the new statutory language, insisting that, "the message, put simply, is this: do something, because conduct speaks louder than words or subjective intent." *Id.* The court concluded that, "the importance we place on the father's conduct accords with the new law's terms." *Id.* at n. 14. Conduct is the manifestation and best indication of intent. The definition of abandonment in § 8–531(1) does not alter that truth.

¶ 24 In *S–114487*, the court severed father's parental rights. *See id.* at 101, 876 P.2d at 1136. There, both parents lived in Texas. *See id.* at 90, 876 P.2d at 1125. When the mother became pregnant, her parents sent her to live with an aunt in Tucson. *See id.* Father remained in Texas. *See id.* The mother placed the child for adoption without the father's knowledge. *See id.* The adoptive parents subsequently moved to sever father's rights. *See id.* at 91, 876 P.2d at 1126. The court noted that, although he was free to do so, father "assumed no parental duties." *Id.* at 96, 876 P.2d at 1131. The court reasoned that "the father must take concrete steps to establish the legal or emotional bonds linking parent and child." *Id.* His failure to act illustrated an objective intent to abandon his child. *See id.*

¶ 25 The present case is distinguishable from *S–114487*. Unlike the father in *S–114487*, this father was incarcerated before the child's birth and remains so. Obviously, father's relationship with his infant child is severely hindered by his incarceration. His conduct, therefore, must be viewed in that context. Moreover, father's conduct illustrates his intent to have a relationship with his child. He requested visitation with the child less than two months after the child was born. His request was denied without explanation. In addition, father persevered in discovering the whereabouts of his child in spite of the fact that ADES did not provide him with that information. Father has not abandoned his child pursuant to § 8–533(B)(1).

¶ 26 The trial court's finding of clear and convincing evidence of abandonment was clearly erroneous.

## CONCLUSION

¶ 27 For the foregoing reasons, we conclude that the trial court was clearly erroneous in its application of A.R.S. § 8–533(B). We reverse the judgment of the trial court.

NOEL FIDEL, Presiding Judge, and SUSAN A. EHRLICH, Judge, concur.