NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOSEPH F., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY,[1] J.P., *Appellees.*

No. 1 CA-JV 14-0114
1 CA-JV 14-0133
(Consolidated)

FILED 10-30-2014

Appeal from the Superior Court in Maricopa County
No. JS 17162
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellees*

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27.

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

**D O W N I E**, Judge:

¶1            In these consolidated appeals, Joseph F. ("Father") challenges the superior court's orders finding his minor son, J.P., dependent and terminating his parental rights to J.P.  For the following reasons, we affirm the severance order and deem the dependency finding moot.

**FACTS AND PROCEDURAL HISTORY**[2]

¶2            In 1999, Father was charged with kidnapping and sexually assaulting his older son's intoxicated 16-year-old female friend.  He pled guilty to attempted sexual assault, a class three felony, and kidnapping, a class two felony.  The court sentenced Father to five years' imprisonment, ordered him to register as a sex offender, and placed him on lifetime probation upon his release from prison.

¶3            Father was released from prison in 2007.  His original terms of probation prohibited "contact with any male or female child under the age of 18, including relatives" without prior written approval of the adult probation department ("APD").  When J.P. was born in 2012, Father received APD's permission to attend his delivery and to see the child in the presence of J.P.'s mother.

¶4            In May 2013, APD filed a probation revocation petition alleging numerous violations by Father, including absconding, possessing or using amphetamine, failing to submit to drug testing, failing to participate and cooperate in counseling, failing to abide by sex offender terms of probation, and failing to "actively participate and remain in sex offender treatment."  Father admitted absconding and was reinstated on

---

[2]        On appeal, "[w]e view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

lifetime probation, again with sex offender terms.[3]  Relevant terms of Father's probation that remain in effect include:

- I will obtain prior written approval of the APD before initiating, establishing or maintaining contact with any child under the age of 18, including relatives.

- I will obtain prior written approval of the APD before going to or near school properties, parks, playgrounds, arcades, swimming pools or other places primarily used by children under the age of 18, or any other location APD has notified me in writing is inappropriate.

- I will obtain prior written approval of the APD before socializing, dating or entering into a sexual relationship with any person who has children under the age of 18.

- I will obtain prior written approval of the APD before possessing children's clothing, toys, games, videos, etc.

¶5        In June 2013, the Department of Child Safety ("DCS") took custody of J.P. because the child's mother was incarcerated and Father was a convicted sex offender.[4] DCS filed dependency and severance petitions.  After a consolidated hearing, the superior court found J.P. dependent as to Father and terminated Father's parental rights. Father timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 8-235(A).

## DISCUSSION

### I.        Statutory Grounds for Severance

¶6        The court may terminate parental rights if it finds the existence of one statutory ground for severance by clear and convincing

---

[3]        At the severance trial, Father testified his admitted probation violation was for using methamphetamine.  The record from the criminal proceedings reflects he admitted to absconding.  Any discrepancy in this regard is immaterial to our decision.

[4]        Mother remained incarcerated during all times relevant here.  Her parental rights to J.P. were also terminated, but she is not a party to this appeal.

evidence. A.R.S. §§ 8-533(B), -537(B). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). We review termination orders for an abuse of discretion. *See Xavier R. v. Joseph R.*, 230 Ariz. 96, 100, ¶ 11, 280 P.3d 640, 644 (App. 2012).

¶7    DCS alleged two grounds for termination: (1) abuse of a child under A.R.S. §§ 8-201(2) and -533(B)(2); and (2) conviction of a felony under A.R.S. § 8-533(B)(4). Because we affirm the severance order based on § 8-533(B)(4), we need not, and expressly do not, address the additional ground found by the superior court under A.R.S. §§ 8-201(2) and -533(B)(2). *See Jesus M.*, 203 Ariz. at 280, ¶ 3, 53 P.3d at 205 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds."). Additionally, the severance order renders the dependency finding moot. *See Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, 515, ¶ 10, 1 P.3d 155, 158 (App. 2000) (otherwise appealable order from permanency hearing essentially moot due to later order terminating parental rights); *Vinson v. Marton & Assocs.*, 159 Ariz. 1, 4, 764 P.2d 736, 739 (App. 1988) (when circumstances in a case change to the extent that a reviewing court's action would have no effect on the parties, then the issue becomes moot for purposes of appeal). Accordingly, we address whether severance was appropriate under A.R.S. § 8-533(B)(4).

¶8    Termination of the parent-child relationship may occur when a parent

> is deprived of civil liberties due to the conviction of a felony if the felony of which that parent was convicted is of such nature as to prove the unfitness of that parent to have future custody and control of the child, including murder of another child of the parent, manslaughter of another child of the parent or aiding or abetting or attempting, conspiring or soliciting to commit murder or manslaughter of another child of the parent . . . .

A.R.S. § 8-533(B)(4).

¶9    "A felony proves unfitness if its commission permits a rational inference of unfitness," though a parent may rebut such an

inference. *In re Juvenile No. J-2255*, 126 Ariz. 144, 146-47, 613 P.2d 304, 306-07 (App. 1980). Father concedes that although attempted sexual assault of a minor and kidnapping are not specifically enumerated offenses in § 8-533(B)(4), his convictions "have in common with the listed crimes that they are directed against children. As such, it is understandable that the State may attempt to demonstrate the Appellant's unfitness to parent from these two convictions." We agree. *See, e.g., In re Pima Cnty. Juvenile Action No. S-983*, 133 Ariz. 182, 650 P.2d 484 (App. 1982) (sexual assault and attempted sexual assault of young women sufficient to support determination of unfitness to parent).

¶10 The superior court recited Father's crimes and sentences and concluded DCS had proven by clear and convincing evidence that severance was appropriate under A.R.S. § 8-533(B)(4), stating:

> Due to [Father's] legal status as a registered sex offender and the terms of his probation, including the specific terms of sex offender probation proven at trial, Father is deprived of his civil liberties. The nature of his felony conviction, attempted sexual abuse of a child, proves that Father is unfit to have future custody and control of [J.P.].

¶11 Father argues that he committed his crimes in 1999 and that he has since participated in sex offender treatment, has not "re-offended sexually," and has not violated probation terms "of a sexual nature." Father, though, admitted at trial that he used methamphetamine less than a year before the severance trial. He also conceded that drug use is a potential trigger for him to reoffend with a sexual offense.

¶12 Father's surveillance officer testified that as recently as 2013, Father failed to participate in sex offender and drug treatment, failed to drug test, associated with individuals engaged in criminal activities, and viewed "sexually stimulating material" in violation of his probation terms. Father admitted failing to attend sex offender treatment or meet with his probation officer during the time he was using methamphetamine. The surveillance officer also testified there had "definitely been some violation behaviors" after Father was reinstated to probation in 2013, though his conduct was addressed through APD's "own consequences and therapeutically, rather than taking him back into custody for yet another revocation." The court also heard testimony that in October 2013, after being reinstated to probation, Father attempted to contact Mother, a convicted felon in Department of Corrections custody, while she was on a prison work detail, leaving a cell phone "in a specific location that then

the female inmates were able to obtain" it. Father's surveillance officer testified Father is currently "supervised at a medium risk" to reoffend or violate probation. She also testified that any visitation between Father and J.P. would have to be supervised for as long as Father remains on probation and in a location where no other children are present.[5]

¶13 Finally, by prohibiting Father from having contact with children, including his own relatives, the superior court in the criminal case clearly viewed Father's felonious conduct as presenting a danger to children. Although a lengthy period of time has elapsed since the underlying offenses, the nature of the underlying convictions, coupled with Father's behaviors while on supervision for those crimes and the superior court's continuing prohibition against contact with children, supports the determination he is unfit to parent J.P.

## II. Best Interests

¶14 Before terminating parental rights, the court must also find by a preponderance of the evidence that termination is in the child's best interest. *See* A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). Credible evidence that the child would benefit from the severance or be harmed by continuation of the parent-child relationship is sufficient. *See Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585, 587, ¶ 8, 177 P.3d 327, 329 (App. 2008). A court may properly consider the stability and permanency adoption can afford a child. *Jose M. v. Eleanor J.*, 234 Ariz. 13, 18, ¶ 23, 316 P.3d 602, 607 (App. 2014). Evidence of an adoption plan, a child's adoptability, or an existing placement meeting the child's needs supports a finding he would benefit from severance. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998); *Maricopa Cnty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994).

---

[5] The DCS case manager testified that supervising visits between Father and J.P. would be unworkable because the visitation center "has children everywhere."

¶15 Evidence at the severance trial established that J.P. is adoptable, is thriving in a stable relative placement that meets all of his needs, and is bonded with his foster mother, who is willing to adopt him. Under these circumstances, the superior court did not err by concluding that severance of Father's parental rights "would further the plan of adoption" and was in J.P.'s best interests.

## CONCLUSION

¶16 For the reasons stated, we affirm the order terminating Father's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D : 10/30/2014