NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MATTHEW C.,
*Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, M.C.,
*Appellees*.

No. 1 CA-JV 19-0338
FILED 5-12-2020

Appeal from the Superior Court in Maricopa County
No.  JD531363
The Honorable Karen L. O'Connor, Judge *Retired*

**VACATED AND REMANDED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Lawrence F. Winthrop joined.

---

**M O R S E**, Judge:

¶1        Matthew C. ("Father") appeals the juvenile court's order terminating his parental rights to his child, M.C.  Father asserts that insufficient evidence supports the juvenile court's finding that termination was warranted based on length of incarceration.  For the following reasons, we vacate the termination order and remand for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Father and his wife ("Mother")[1] are the natural parents of M.C., born January 2017 (the "Child").  In November 2017, when the Child was 11 months old, Father was arrested for attempted theft of $6,000 in merchandise from Saks 5th Avenue.

¶3        Two months later, the Department of Child Safety ("DCS") filed a petition alleging that the Child was dependent as to Father on the grounds of neglect arising out of domestic violence, substance abuse, and incarceration.  The Child was placed with his maternal grandmother after his paternal grandparents declined to serve as a placement.  During his incarceration, Father sent "cards/gifts/letters to [the] case manager almost weekly to provide to his son."  Father also had "a couple of video visits" with the Child and Mother while in jail.  In March 2018, Father pled guilty to one count of organized retail theft and was sentenced to three-and-a-half years in prison.  Father had his visitation rights curtailed for eight months for a drug infraction.  When visits resumed, paternal grandparents brought the Child to visit Father once a month.  In August 2018, the court found the Child dependent as to Father.

¶4        In May 2019, DCS moved to terminate Father's parental rights based on the length of his incarceration.  The Child's paternal grandparents

---

[1]        The juvenile court also terminated Mother's parental rights; she is not a party to this appeal.

moved to intervene in the case. The juvenile court denied the motion to intervene because both parents still retained their parental rights and because the paternal grandparents could present their concerns through the guardian ad litem, the parents, and DCS. Father moved to dismiss the termination action and appoint the paternal grandparents as the Child's permanent guardians.

¶5        The court consolidated the termination and guardianship matters for trial in September 2019. At trial, the DCS caseworker testified that the Child, then two years old, left Father's care when he was eleven months old, and he would be four years old at Father's maximum release date in May 2021. From there, the caseworker said that Father would need domestic violence and substance abuse services before reunification could occur. DCS encouraged Father to participate in services while incarcerated, including parenting, domestic violence, substance abuse, and life skills classes; however, Father failed to participate. Meanwhile, the Child was adoptable and in an adoptive placement that met his needs with his maternal grandmother. Finally, the caseworker testified that termination of Father's parental rights would free the Child "from waiting in limbo."

¶6        Father testified he could be released as early as September 2020, and planned to live in a halfway house after his release so he could find employment and save money to rent an apartment. He estimated this would take "[f]our months, five months at the most." Father also testified that he maintained sobriety for four years before 2017, was two-years sober by the time of the termination trial, attended "NA and AA meetings," and had signed up for substance-abuse services in prison but was denied priority because he was not imprisoned for a drug-related offense.[2] The Child's paternal uncle testified that the Child would suffer a detriment if paternal uncle's relationship with the Child ceased. The Child's paternal grandfather testified that the Child knew that Father was his father and that he was "a good father."

¶7        After considering the length of Father's prison sentence and its effect on his relationship with the Child, see Michael J. v. Ariz. Dep't of Econ. Sec., 196 Ariz. 246, 251-52, ¶ 29 (2000), the juvenile court found that termination of Father's parental rights was warranted on the grounds of his length of incarceration, see A.R.S. § 8-533(B)(4). The court also found severance was in the Child's best interests and entered an order terminating Father's parental rights. Additionally, the court found that a permanent

---

[2]        Father testified he provided his attorney with a letter from a prison counselor supporting this assertion, but the letter is not found in the record.

guardianship was not warranted. Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶8 While the right to custody of one's child is not absolute, that right is nonetheless fundamental. *Michael J.*, 196 Ariz. at 248-49, ¶¶ 11-12. Therefore, termination of parental rights is generally not favored and "should be considered only as a last resort." *Maricopa Cty. Juv. Action No. JS–500274*, 167 Ariz. 1, 4 (1990); *see also Cochise Cty. Juv. Action No. 5666–J*, 133 Ariz. 157, 159 (1982) ("The permanency of termination dictates that it be resorted to in only the most extreme cases."); *Ariz. Dep't of Econ. Sec. v. Mahoney*, 24 Ariz. App. 534, 537 (1975) ("Termination of the parent-child relationship should not be considered a panacea but should be resorted to only when concerted efforts to preserve the relationship fails.").

¶9 To terminate a parent-child relationship, the juvenile court must find that clear and convincing evidence supports one of the statutory grounds for severance. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005); A.R.S. § 8-533(B). Additionally, the court must determine by a preponderance of the evidence that termination of the relationship is in the child's best interests. *Kent K.*, 210 Ariz. at 284, ¶ 22. We review a trial court's termination order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). We accept the court's findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**I. Remand is Necessary to Determine if the Evidence Supports a Statutory Ground for Termination.**

¶10 Father argues the juvenile court erred in finding that termination was warranted under A.R.S. § 8-533(B)(4) because there is insufficient evidence to support its findings under the *Michael J.* factors.

¶11 A parent's rights may be terminated if that "parent is deprived of civil liberties due to the conviction of a felony if . . . the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). The "normal home" to which the statute refers is "a home in which the respondent natural father has a presence, and it does not refer to a 'normal home' environment created by [others]." *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 215, ¶ 14 (App. 2016) (quoting *Maricopa Cty. Juvenile Action No. JS-5609*, 149 Ariz. 573, 575 (App. 1986)). There is "no 'bright line' definition of when a sentence is

sufficiently long to deprive a child of a normal home for a period of years."
*Michael J.*, 196 Ariz. at 251, ¶ 29. Indeed, a "20-year sentence might not
provide sufficient basis for severing an incarcerated parent's rights, while
in another case a 3-year sentence could provide the needed basis." *Id.*
Rather, the inquiry is individualized and fact-specific, and requires the
court to consider "all relevant factors," including but not limited to:

> (1) the length and strength of any parent-child relationship
> existing when incarceration begins, (2) the degree to which
> the parent-child relationship can be continued and nurtured
> during the incarceration, (3) the age of the child and the
> relationship between the child's age and the likelihood that
> incarceration will deprive the child of a normal home, (4) the
> length of the sentence, (5) the availability of another parent to
> provide a normal home life, and (6) the effect of the
> deprivation of a parental presence on the child at issue.

*Id.* at 251-52, ¶ 29. The juvenile court need not make findings on the record
for each of these factors. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445,
451-52, ¶ 19 (App. 2007). "[T]he juvenile court will be deemed to have made
every finding necessary to support the judgment." *Ariz. Dep't of Econ. Sec.
v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (alteration in original)
(citation omitted). However, a "lack of evidence on one or several of the
*Michael J.* factors may or may not require reversal or remand on a severance
order." *Christy C.*, 214 Ariz. at 450, ¶ 15.

### A. No Reasonable Evidence Supports the Court's Finding that Father Failed to Maintain a Parent-child Relationship.

¶12 The juvenile court here considered the relevant factors and
concluded they weighed in favor of terminating Father's parental rights.
The court found both that "Father has not maintained a parent-child
relationship due to the child's young age and Father's incarceration" and
"[t]he child's young age and Father's incarceration prevents Father's ability
to maintain a meaningful parental relationship with the child."

¶13 Despite his physical absence while incarcerated, Father claims
he worked to maintain, and has maintained, a parent-child relationship
with the Child during his incarceration. The court received testimony and
evidence to support this claim. *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234
Ariz. 437, 442, ¶ 19 (App. 2014) (acknowledging that, under some
circumstances, a court could reasonably find that a parent-child
relationship could be built through telephone calls and letters while the

parent awaited release from incarceration). The DCS case manager testified that Father had a relationship with the Child before incarceration and worked to maintain the relationship after his incarceration. Father attended regular and frequent in-person visits with the Child while incarcerated. Father has also maintained phone contact with the Child and sent gifts, letters, drawings, and cards to his son. The case manager confirmed that Father sent gifts for the Child "at least three times a week." Father also provided financial assistance—sending his earnings from prison work and tax refunds to the foster placement, and paying "for toys once a week and clothes and diapers and wipes."

¶14        DCS counters that Father only visited the Child once a month. But the record reflects that monthly visits were the maximum number DCS permitted. *See Matthew L.*, 223 Ariz. 547, 551, ¶¶ 17-18 (affirming denial of severance petition when father, sentenced to 3.5 years in prison, was denied visitation by ADES). Nor is this a case where incarceration has prevented in-person contact between a parent and child. *Cf. Christy C.*, 214 Ariz. at 451, ¶ 17 (concluding that juvenile court may consider that, because an adult must accompany minor children to visitation, the lack of evidence of any adult willing to facilitate visitation weighs in favor of severance).[3] And DCS's final progress report states that Father "participates in visits consistently with [the Child]."

¶15        The paternal grandfather also described the Child's connection to Father during their visits, including that (1) the Child "would say, daddy, because he would recognize where we were going," (2) the Child and Father played together, (3) the Child "wasn't too excited about leaving," and (4) the Child would repeatedly say "[b]ye-bye daddy" on the drive home. The juvenile court acknowledged this testimony at trial, recognizing that paternal grandfather had "testified that [F]ather and [C]hild know each other as father and son." *Contra Christy C.*, 214 Ariz. at 450, ¶ 16 (affirming findings that parent-child relationship was not maintained in prison and it was unclear whether children knew who their mother was); *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 353, ¶ 7 (App. 1998) (affirming severance when father and child were together for only six

---

3        *Cf. also Benjamin H. v. Ariz. Dep't of Econ. Sec.*, 1 CA-JV 08-0104, 2008 WL 5066208, at *3, ¶ 10 (Ariz. App. Nov. 28, 2008) (mem. decision) (finding no expectation of parent-child relationship with no "relative of father's who might have an interest in visiting father in prison and bringing [child] along."); *Michael A. v. Ariz. Dep't of Econ. Sec.*, 1 CA-JV 07-0188, 2008 WL 2447629, at *5, ¶ 18 (Ariz. App. June 12, 2008) (mem. decision) (same).

months before father sentenced to a 5.5-year prison term and "child does not know her father").

¶16        We cannot find reasonable evidence in this record to support the juvenile court's conclusion that Father had not maintained the parent-child relationship, even within the constraints imposed by the prison system. A prison sentence will not always support severance of a parental relationship with a young child. *See Matthew L.*, 223 Ariz. at 552, ¶ 26 (Portley, J., specially concurring) (noting that "no Arizona appellate court has ever opined that any specific prison term is, as a matter of law, a sufficient basis to terminate parental rights"). Although the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), the uncontroverted evidence here shows that the Child recognized Father as his parent and Father acted "persistently to establish the [parent-child] relationship however possible." *Michael J.*, 196 Ariz. at 250, ¶ 22.

## B.    The Remaining *Michael J.* Factors.

¶17        For the third factor—the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home—the juvenile court found that "[u]pon release, Father would need to participate in services to demonstrate that he can effectively and safely parent the child. Father would need to demonstrate that he can maintain long-term sobriety outside a controlled environment. Father would also need to demonstrate that he can provide a stable home for the child." These findings are reasonably supported by the evidence given Father's admitted past struggles with substance abuse.

¶18        It is unclear whether the court found the fourth factor—the length of Father's sentence—weighed for or against termination, but the undisputed evidence showed that "Father will not be eligible for release until between September 2020 and May 2021." *See Jeffrey P.*, 239 Ariz. at 214, ¶ 8 (holding that court "must consider the designated length of the sentence and may consider the possibility of early release").

¶19        For the fifth factor—the availability of another parent to provide a normal home life—the parties do not dispute that Mother's parental rights have been terminated.

¶20        The court made no specific findings on the first or sixth factors. DCS and Father point to evidence in the record supporting their respective positions, but without findings by the juvenile court we cannot

presume that these factors do or do not support termination. *See Jesus M.*, 203 Ariz. at 282, ¶ 12 (noting that "we do not re-weigh the evidence on review").

¶21　　　　Accordingly, we vacate the juvenile court's finding only as to the second *Michael J.* factor.[4]  We recognize that insufficient evidence on a single *Michael J.* factor will not always require a remand, *see Christy C.*, 214 Ariz. at 450, ¶ 15, but we remand here because it is not clear from this record that the juvenile court would reach the same conclusion.  We do not suggest any outcome on remand, but direct the juvenile court to reconsider DCS's motion to terminate Father's parental rights in light of our ruling that no reasonable evidence supports a finding that there was no parent-child relationship.

---

[4]　　　The presence of a parent-child relationship is only one relevant factor and does not prevent severance under A.R.S. § 8-533(B)(4). *See Chase M. v. Dep't of Child Safety*, 1 CA-JV 17-0571, 2018 WL 2307022, at ¶ 14 (Ariz. App. May 22, 2018) (mem. decision) (affirming severance under § 8-533(B)(4) despite evidence that father continued to maintain some relationship with son).  However, a review of termination decisions, both published and unpublished, suggests that severance is a somewhat unusual result when a parent has a continuing relationship with their child and is sentenced to terms of imprisonment of less than 5 years. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 231, 233-34, ¶¶ 11, 14 (App. 1999) (noting Arizona had not previously severed parental rights based on a sentence as short as 3.5 years and in no case before 1995 based on a 5.25–year sentence), *vacated*, 196 Ariz. 246, 251, ¶ 28 (2000) ("As the court of appeals noted, Arizona has not previously severed parental rights based upon the effect of a sentence that short.").  From our review, terminations based on incarceration commonly involve longer sentences, children with no knowledge of their incarcerated parent, or children who have never met their parent. *See, e.g., Christy C.*, 214 Ariz. at 448, 450, 452, ¶¶ 6, 16, 22 (affirming termination where sentence was 6.5 years, children had not been in mother's care for extended period prior to arrest, and youngest children may not have even known their mother); *James S.*, 193 Ariz. at 353, 356, ¶¶ 7, 21 (affirming termination where prison sentence was 5.5 years and the "child does not know her father"); *Jeremy R. v. Ariz. Dep't of Econ. Sec.*, 2 CA-JV 2008-0123, 2009 WL 726026, at *1-2, 4, ¶¶ 4, 8, 14 (Ariz. App. Mar. 19, 2009) (mem. decision) (affirming termination where father, with two-year term of imprisonment, had seen son only once).

## II.  Best Interests Finding.

¶22       Father also disputes the juvenile court's best interest findings. Because we vacate the court's ruling on the grounds for termination, we also vacate the court's best interests finding.  *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149, ¶ 8 (2018) (termination is a two-step process that first requires the court find a statutory ground for termination exists).

## III.  Denial of the Motion for Appointment of a Permanent Guardian.

¶23       Father also appeals the juvenile court's order denying the motion for appointment of a permanent guardian.  The moving party must prove by clear and convincing evidence that a permanent guardianship is in the child's best interest and establish four statutory requirements.  *See* A.R.S. §§ 8-871(A) and -872(G).  When reviewing the juvenile court's ruling on a guardianship order, "[w]e will not reverse the juvenile court's order unless it is clearly erroneous." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997).

¶24       As a threshold matter, even though DCS does not challenge standing, Father lacked standing to appeal the denial of the guardianship motion because the juvenile court terminated his parental rights.  *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370-71, ¶ 2 (App. 2009); *Sands v. Sands*, 157 Ariz. 322, 324 (App. 1988) ("[O]nce the order of severance was issued, the father's standing as a parent terminated.").  A permanent guardianship is only appropriate where the "likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests."  A.R.S. § 8-871(A)(4).  Once a court determines termination is in a child's best interests and the parent's rights are terminated, the parent no longer has standing to challenge placement. *Antonio M.*, 222 Ariz. at 370-71, ¶ 2.  However, because we vacate the court's termination and best interest findings, we will consider Father's appeal of the guardianship motion.  *See Bennett v. Brownlow*, 211 Ariz. 193, 195, ¶ 14 (2005) (standing in Arizona is prudential not jurisdictional).

¶25       To secure a permanent guardianship, Father must show "[t]he child has been in the custody of the prospective permanent guardian for at least nine months" unless the juvenile court waives the requirement for good cause.  A.R.S. § 8-871(A)(2).  Father does not meet the temporal requirement.  The Child has been placed with his maternal grandmother since December 2017.  Nor did the court abuse its discretion by failing to waive this requirement.  The evidence in the record, including the Child's young age, the length of the Child's placement with maternal grandmother,

and the fact that maternal grandmother was meeting his needs, all support the court's denial of a permanent guardianship with the paternal grandparents. *See* A.R.S. § 8-871(C) ("In proceedings for permanent guardianship, the court shall give primary consideration to the physical, mental and emotional needs and safety of the child."); *see also Jesus M.*, 203 Ariz. at 280, ¶ 4 (noting we accept the juvenile court's factual findings when they are supported by any reasonable evidence).

## CONCLUSION

¶26         For the foregoing reasons, we vacate the juvenile court's order terminating Fathers parental rights to the Child, affirm the order denying a permanent guardianship with the paternal grandparents, and remand for further proceedings consistent with this decision. We recognize that circumstances may have changed since initiation of this appeal and the juvenile court need not ignore such circumstances on remand.



AMY M. WOOD • Clerk of the Court
FILED:     AA